IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Dependency of | ) | |
| | ) | No. 33991-2-III |
| L.W. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |

FEARING, C.J. — A mother appeals the trial court's order limiting her visitation rights with her dependent daughter. Because the evidence supports harm to the child from unsupervised and extended visitation, we affirm the trial court order.

## FACTS

This appeal concerns care for the minor child, Lisa Wallace, whose mother is appellant Joyce Bartz. Lisa Wallace and Joyce Bartz are pseudonyms.

Joyce Bartz and her husband suffer from mental disorders and sociopathy endangering the life of any child in their care. Both Bartz and her husband tortured, abused, and neglected at least two of Lisa Wallace's older siblings. The oldest child exhibited significant scarring across her entire body. The Washington State Department

of Social and Health Services (DSHS) removed Lisa's three older siblings from their parents' care in 2012. This court affirmed termination of parental rights for all three children in *In re Parental Rights to J.B.*, No. 33115-6-III (Wash. Ct. App. Apr. 19, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/331156.unp.pdf.

On May 16, 2015, Joyce Bartz bore Lisa Wallace.

PROCEDURE

On June 24, 2015, DSHS filed a dependency petition regarding Lisa Wallace. DSHS then removed Lisa from the custody of her parents.

DSHS requested nurse practitioner Teresa Forshag, with experience and training in evaluating and treating child abuse, to review Lisa Wallace's medical records because of scarring on the infant's arms near her hands. Based on Forshag's review of birth and one week checkup records of Lisa, Forshag discounted Joyce Bartz's claim that the scarring was birth marks. The scarring likely resulted from inflicted burns. Lisa's parents never sought medical treatment for Lisa's arm injuries.

On June 29, the trial court entered a shelter care hearing order, which placed Lisa Wallace in foster care during the pendency of the dependency and limited Joyce Bartz and Lisa's father to four hours per week visitation, with both parents visiting simultaneously. On July 27, the trial court entered an order continuing shelter care and an order of default against Lisa's father because of his failure to answer the dependency petition.

2

No. 33991-2-III
*In re Dependency of L.W.*

On October 19, 2015, the trial court entered an order regarding Lisa Wallace's

father's contact with Lisa. The order provided:

CONTACT: The parent shall regularly attend and the Department
[DSHS] shall provide four hours of family therapy per week via C. Monge,
M.Ed., at a DCFS [Division of Children and Family Services] approved
location. Contact may be expanded at the discretion of the social worker in
agreement with the Court Appointed Special Advocate, so long as the
father regularly attends family therapy and is [in] compliance with safety
provisions. No family therapy appointment shall take place if the parent is
incarcerated or appears to be under the influence of drugs and/or alcohol.
Family therapy may occur jointly with the mother so long as the
parents agree and so long as the therapist does not identify harm to the
child. Contact initially as the father joins the family therapy may be with
the parents together, as is their desire. If there is physically or emotionally
dangerous behavior by either parent or contact not in the child's best
interests, the therapist may separate them for therapy, with each parent
having two hours of contact per week. If the behavior is sufficiently
dangerous to warrant in the family therapist's opinion, she may suspend
family therapy for one or both parents, at which point any party may set
contact issues for hearing.
The parents shall not engage in contact outside the therapy sessions.
They shall leave the therapy sessions immediately upon their conclusion
and shall leave the premises; they shall not linger in the halls, act in a
manner intimidating to a reasonable provider or caregiver or otherwise
interfere with the child's well-being and placement.

Clerk's Papers (CP) at 185-86 (footnotes omitted).

On October 24, 2015, in response to a report from Joyce Bartz of domestic

violence, sheriff deputies traveled to Bartz's and her husband's home. An inebriated

Bartz complained of her husband, who reposed on a couch. The deputies left, but

returned an hour later. While the deputies questioned Joyce Bartz and her husband a

second time, Bartz flung keys at her husband's head. The deputies arrested Bartz for

3

assault in the fourth degree, domestic violence. After the October 24 altercation, DSHS separated the family treatment sessions for Joyce Bartz and her husband and gave two hours of treatment for each instead of four hours together.

Before the hearing on the dependency petition, Joyce Bartz regularly attended offered visits with her daughter. During visits, Bartz rendered appropriate care to Lisa with regards to feeding, changing, holding, and soothing. Bartz also accepted parenting instruction from the family therapist.

On November 30, 2015, the trial court conducted a contested fact-finding hearing in the dependency as to the petition against Joyce Bartz. Nurse practitioner Teresa Forshag testified that Lisa Wallace is not safe with her father or mother. Forshag recommended only supervised visits with a professional holding the highest level of training, a master's degree level therapist. Supervision by any other professional would not suffice because of the need for constant intense supervision. Charise Monge, a licensed mental health counselor associate who provided family therapy sessions for Joyce Bartz and Lisa, testified that future contact between Bartz and her daughter should only occur in a therapeutic setting and supervision provided for the visitation of other dependent children did not suffice. Joyce Bartz testified that two hour weekly visits would not facilitate bonding with her daughter.

The trial court declared Lisa Wallace to be dependent and ordered that the child remain in foster care under the supervision of DSHS. The court found that injuries to

4

Lisa resulted from "objective evidence of mistreatment of [Lisa]." Report of Proceedings at 154. The trial court's order of dependency adopted the allegations of the petition, found the marks on Lisa' hands to be caused by abuse while in her parents' care, and found Bartz's chronic deficiencies to be exacerbated by her alcohol abuse. The court order limited contact between the mother and daughter:

> CONTACT: The Order re: Contact entered 10/9/15 is incorporated by reference. As agreed in the Order re: Contact entered 10/9/15, the mother shall regularly attend and the Department shall provide a minimum of two hour family therapy per week via C. Monge, M.Ed., at a DCFS approved location. Family therapy shall not occur with the parents together (four hour option together for the parents) given recent and untreated domestic violence (therapy of the parents having been separated per the 10/9/15 Order). No contact shall take place if the parent is incarcerated or appears to be under the influence of drugs and/or alcohol.

CP at 246.

## LAW AND ANALYSIS

On appeal, Joyce Bartz does not challenge the order of dependency. She instead assigns error to the trial court's limitation of visitation with her infant daughter to two hours of supervised visitation per week. The State responds that, given the dangers posed to the child by the mother alone and the parents together, the trial court's order limiting contact was manifestly reasonable. We agree with the State that the trial court did not abuse its discretion when awarding Bartz a minimum of two hours of visitation because Bartz posed significant risks to Lisa. Thus, we affirm.

Trial courts possess broad discretion to determine the best interests of a child in

5

cases touching on a child's welfare. *In re Custody of Smith*, 137 Wn.2d 1, 39, 969 P.2d 21 (1998), *aff'd sub nom. Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). Trial courts enjoy considerable flexibility to receive and evaluate all relevant evidence in reaching a decision that recognizes both the welfare of the child and parental rights. *In re Dependency of Schermer*, 161 Wn.2d 927, 952, 169 P.3d 452 (2007). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *In re Dependency of Tyler L.*, 150 Wn. App. 800, 804, 208 P.3d 1287 (2009).

The legislature declares that "the family unit should remain intact unless a child's right to conditions of basic nurture, health, or safety is jeopardized." RCW 13.34.020. RCW 13.34.136(2)(b)(ii) states:

> (A) Visitation is the right of the family, including the child and the parent, in cases in which visitation is in the best interest of the child. Early, consistent, and frequent visitation is crucial for maintaining parent-child relationships and making it possible for parents and children to safely reunify. The supervising agency or department shall encourage the maximum parent and child and sibling contact possible, when it is in the best interest of the child, including regular visitation and participation by the parents in the care of the child while the child is in placement.
> . . . .
> (C) Visitation may be limited or denied only if the court determines that such limitation or denial is necessary to protect the child's health, safety, or welfare.

To restrict liberal visitation, DSHS must prove that visitation poses a current concrete risk to the child. *In re Dependency of Tyler L.*, 150 Wn. App. at 804 (2009).

6

Harm to the child must create "'an actual risk, not speculation based on reports.'" *In re Dependency of Tyler L.*, 150 Wn. App. at 804 (quoting *In re Dependency of T.L.G.*, 139 Wn. App. 1, 15, 156 P.3d 222 (2007)). If the evidence supports the conclusion that visitation will harm the child, RCW 13.34.136 does not require an express finding that a visitation limitation is necessary to protect the child's health, safety, or welfare. *In re Dependency of T.H.*, 139 Wn. App. 784, 794, 162 P.3d 1141 (2007).

In deciding whether our trial court abused its discretion, we juxtapose two Washington decisions: *In re Dependency of T.H.*, 139 Wn. App. 784 and *In re Dependency of Tyler L.*, 150 Wn. App. 800. In *In re the Dependency of Tyler*, 150 Wn. App. 800, this court granted discretionary review to a mother whose visitation with her sons was extinguished, not because of the mother's conduct, after a finding of dependency. The guardian ad litem requested termination of the mother's visitation because the children became agitated before and after the mother's visits. A child mental health specialist recommended and the mother requested future contact in a therapeutic setting. The trial court denied the request for therapeutic visitation and suspended the mother's visitation, despite finding that the mother caused no harm to her sons. This court found that the dependency court erred in suspending visitation because no finding showed the mother caused harm to the children during the visits.

In *In re Dependency of T.H.*, 139 Wn. App. 784, Stella Hackney-Farias appealed the limitation of her rights to visit her son, T.H., while he was dependent. Hackney-

7

Farias physically and verbally abused T.H., neglected T.H., and knew of her boyfriend's sexual abuse of T.H. but took limited protective actions. While in foster care, Hackney-Farias accused T.H. of lying about the abuse, sent him e-mails accusing him of lying, and contacted T.H. through social media. The trial court, while recognizing the mother's refusal to participate in treatment and the emotional damage her contact imposed on T.H., denied Hackney-Farias' requests for personal visitation. The trial court limited visitation to telephone conversations. This court reasoned that the trial court's limitation of visitation constituted "an attempt to maximize parent-child contact while protecting T.H. from harm." *In re Dependency of T.H.*, 139 Wn. App. at 796. We found the order consistent with former RCW 13.34.136(1)(b)(ii) (2006), since the order acknowledged the importance of visitation by permitting telephone conversations, but also considered the risk of harm to T.H. by prohibiting personal visitation.

Lisa Wallace's dependency order and the facts of this appeal echo the order and facts in *In re Dependency of T.H.*, not *In re Dependency of Tyler*. Unlike *In re Dependency of Tyler*, where the trial court refused any visitation, our trial court ordered supervised visitation in a therapeutic setting as recommended by nurse practitioner Forshag and therapist Charise Monge. The mother in *Tyler* did not cause harm to her children during the visits. Lisa suffered physical abuse during the first month of life, and the injuries echoed injuries received by Lisa's siblings from the conduct of Joyce Bartz. Alcohol abuse exacerbated Bartz's chronic parental deficiencies.

8

Joyce Bartz argues that the evidence did not support the need for intense supervision by family a therapist with a master's degree and the facts did not support the need to restrict visitation to two hours. We disagree. All experts testified to the need for constant and intense supervision based on Bartz's history with Lisa Wallace and Bartz's other children. Lisa suffered untreated and unexplained burns at the hands of her parents. Also, the trial court did not limit visitation to two hours per week. The court instead established a minimum period of visitation as being two hours. The therapist could expand visitation as the therapist saw fit.

Like in *In re Dependency of T.H.*, Bartz's trial court attempted to maximize parent-child contact by ordering two hours of weekly visitation in a therapeutic setting. The court further acknowledged the importance of visitation by allowing expanded visitation at the discretion of the social worker and Lisa's special advocate. As in *In re Dependency of T.H.*, our trial court provided reasonable visitation to an abusive and neglectful mother.

## CONCLUSION

We affirm the trial court's order of dependency limiting the visitation rights of Joyce Bartz to her daughter, Lisa Wallace.

9

No. 33991-2-III
*In re Dependency of L.W.*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Lawrence-Berrey, J.

10